**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JIMMY DUNCAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 01-2360 (GK)** |
| ) | |
| **WASHINGTON METROPOLITAN AREA** ) | |
| **TRANSIT AUTHORITY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff, Jimmy Duncan, a Maryland resident, brings this action against the Washington Metropolitan Area Transportation Authority ("WMATA" or the "Authority") alleging unlawful employment discrimination in violation of Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794. This matter is currently before the Court on Defendant's Motion for Summary Judgment [Dkt No. 37]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendant's Motion is hereby **granted.**

I.   **BACKGROUND**

   A.   **Facts**[1]

   For nearly eleven years, in two separate stints, Plaintiff
worked for WMATA: first from 1986 through 1993, and again from 1998
through 2001.  Duncan served as a custodian from 1986 until 1991,
when he was promoted to the position of "parts runner" in the
Automatic Fare Collection Branch ("AFC").   In February 1992,
Plaintiff sustained an injury to his back during an automobile
accident that was unrelated to his employment.  He subsequently
returned to work and performed his regular duties without incident
for several months.  See Duncan v. WMATA, No. 95-2360, slip op. at
2 (D.D.C. May 19, 1997).

   Because of a "bump down" pursuant to the union seniority
system contained in the governing collective bargaining agreement,
Plaintiff was reassigned to the position of parts runner in WMATA's
Elevator/Escalator Branch("ELES") in early December 1992.  That
position required heavier lifting than he was accustomed to, and on
December 16, 1992, Duncan re-injured his back while on the job.
According to Plaintiff, the heavy lifting involved in his ELES
assignments became impossible for him to perform after this injury,

---

   [1]   Pursuant to Local Civil Rule 7(h), "[i]n determining a
motion for summary judgment, the Court may assume that facts
identified by the moving party in its statement of material facts
are admitted, unless such a fact is controverted in the statement
of genuine issues filed in opposition to the motion."  Accordingly,
unless otherwise noted, the Court states only uncontroverted facts
from the parties' Statements of Material Facts Not in Dispute.

and he requested a lighter-duty assignment as a result.  See <u>Duncan</u> <u>v. WMATA</u>, No. 01-2360, slip op. at 2 (D.D.C. Mar. 30, 2003).  When Duncan's supervisor informed him that no lighter-duty jobs were available, he took unpaid sick leave from January 1993 until August 1993.

WMATA requested that Duncan report to the Authority's Medical Office in August 1993 so that his injury could be assessed and his medical status formally evaluated.  Plaintiff failed to report as requested, or to otherwise provide sufficient medical information to WMATA.  On October 7, 1993 WMATA terminated him, citing his refusal to comply with the Medical Office's directives.

After first filing a complaint with the Equal Employment Opportunity Commission ("EEOC"), Plaintiff brought suit in this Court on December 22, 1995, alleging that WMATA violated the Americans with Disabilities Act ("ADA") by failing to reasonably accommodate his disability and by discharging him.  See <u>id.</u>  On May 27, 1997, after a five-day trial, a jury returned a verdict for Duncan and awarded him a total of $250,000 in compensatory damages: $125,000 on his wrongful termination claim and $125,000 on his reasonable accommodation claim.  See <u>Duncan v. WMATA</u>, No. 95-2360, J. on the Verdict (D.D.C. May 27, 1997).

Subsequent to the jury verdict, this Court ordered WMATA to reinstate Plaintiff to the position of AFC parts runner.  By letter dated July 7, 1998, however, WMATA informed Duncan that his

reinstatement was "conditional upon the outcome of the [upcoming] appeal to the D.C. Circuit Court of Appeals." See Def.'s Mot. for Summ. J., Ex. 4, July 7, 1998 Letter from Mark L. Sullivan to Suzanne Logue Lawrence.  Plaintiff continued in WMATA's employ throughout the pendency of its appeal, from July 1998 through April 2001.  By all accounts, Duncan performed his job satisfactorily and without accommodation during this period.

On March 2, 2001, the Court of Appeals, sitting en banc, reversed the judgment and vacated this Court's post-trial Orders, including the Order requiring WMATA to reinstate Plaintiff to his AFC parts runner position.  The Court of Appeals concluded that Duncan was not disabled within the meaning of the ADA and therefore could not claim the protections it affords.  See Duncan v. WMATA, 240 F.3d 1110, 1117 (D.C. Cir. 2001)(en banc).

On April 11, 2001, five weeks after the Court of Appeals issued its opinion, WMATA again terminated Plaintiff.  At the time, Charles Buetter, Acting Superintendent of the Office of Systems Maintenance within WMATA's AFC Branch, stated that because this Court's reinstatement Order had been vacated, the condition underlying his reinstatement had lapsed.  See Def.'s Mot. for Summ. J., Ex. 1, Buettner Dep. at 19-20.

In January 2002, WMATA posted a vacancy for an AFC parts runner, the position Duncan had previously held.  The vacancy announcement indicated that selection preference would be given to

"Maintenance and Construction seniority district, System-Wide (L689), Authority-Wide, and external candidates, respectively." See Def.'s Mot. for Summ. J., Ex. 5. Plaintiff submitted an application in response to this announcement but was not selected for the job.

   **B.   Procedural History**

   Plaintiff brought this action on November 13, 2001 and amended his Complaint on March 12, 2002. Duncan presents two claims: first, he alleges that by terminating him on April 11, 2001, WMATA violated the anti-retaliation provisions of the Rehabilitation Act; second, he contends that WMATA unlawfully failed to rehire him in January 2002, when he applied for the vacant AFC parts runner position.

   On March 29, 2003, the Court denied WMATA's Motion to Dismiss, concluding that the suit was not barred by sovereign immunity, that Plaintiff had stated a valid retaliation claim under the Rehabilitation Act, and that – at least for purposes of a Motion to Dismiss – Plaintiff had produced sufficient evidence of a causal connection between the filing of his first lawsuit and his April 2001 termination. See Duncan v. WMATA, No. 01-2360, slip op. (D.D.C. Mar. 30, 2003). On April 15, 2003, the Court stayed all proceedings pending the D.C. Circuit's resolution of Barbour v. WMATA, a case testing whether WMATA is indeed immune from suit under the Eleventh Amendment. After the Court of Appeals ruled

that WMATA waived its sovereign immunity by accepting certain federal funds, and thus is subject to suit, the Court lifted its stay on March 9, 2005 . <u>See</u> Dkt. No. 26.

WMATA filed the instant Motion for Summary Judgment on September 23, 2005.

## II.  STANDARD OF REVIEW

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The nonmoving party then must "go beyond the pleadings and by [its] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324.  "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Bias v. Advantage Intern., Inc.</u>, 905 F.2d 1558, 1561 (D.C. Cir. 1990).  It must provide "evidence that

would permit a reasonable [fact-finder] to find" in its favor. Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

In deciding a motion for summary judgment, a "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see also Washington Post Co. v. U.S. Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989). Ultimately, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## III. ANALYSIS

### A. Defendant Is Entitled to Summary Judgment on the Wrongful Termination Claim Because Plaintiff Cannot Establish a Causal Connection Between His Protected Activities and His April 2001 Termination

WMATA argues that it is entitled to summary judgment on the wrongful termination claim because Plaintiff has offered "no evidence on which a reasonable trier of fact could infer a connection between the protected activity he engaged in and the adverse employment actions he suffered." Def.'s Mot. for Summ. J. at 1. According to WMATA, Duncan's 1998 reinstatement was conditioned upon the outcome of its appeal. Id. at 10. When the D.C. Circuit ruled in its favor in 2001, therefore, the condition

-7-

underlying the reinstatement lapsed, freeing WMATA to renew its 1993 decision to terminate Duncan. Id. Because it made that decision well before Plaintiff filed an EEOC complaint or initiated the first round of litigation, WMATA argues that there can be no causal link between Duncan's protected activities and the 2001 termination. Id. at 13.

Plaintiff disputes WMATA's characterization of the 2001 termination, arguing that the Rehabilitation Act does not recognize "conditional employment" and therefore the 1993 and 2001 terminations were distinct and separate adverse actions. See Pl.'s Opp'n at 9. Duncan contends that the "close temporal proximity," of five weeks, between the Court of Appeals decision and his 2001 termination, combined with his "three year tenure of fully successful employment," give rise to an inference of retaliation that should enable him to survive summary judgment. See id. at 6-8.

To prevail on a retaliation claim under the Rehabilitation Act, a plaintiff must satisfy the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green and its progeny. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Reeves, 530 U.S. at 142; and Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998)(en banc). Accordingly, the plaintiff must first make out a prima facie case by showing that: (1) he engaged in a statutorily protected activity; (2) he suffered

an adverse employment action; and (3) there was a causal connection between the protected activity and the employment action. See <u>Brown v. Brody</u>, 199 F.3d 446, 452-53 (D.C. Cir. 1999).

If the plaintiff succeeds, an inference of discrimination arises and the burden of production then shifts to the defendant to articulate a "legitimate non-discriminatory reason" for the adverse employment action.  See <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252 (1981).  Should the defendant carry this burden, the inference of discrimination drops out of the case.  The plaintiff must then be afforded an "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  <u>Reeves</u>, 530 U.S. at 143.  While the burden of production shifts back and forth, the plaintiff bears the burden of persuasion at all times.  See <u>McGill v. Muñoz</u>, 203 F.3d 843, 846 (D.C. Cir. 2000).

Because it is undisputed that Duncan engaged in protected activities (filing his EEOC claim and this lawsuit) and suffered an adverse employment action (the 2001 termination), his <u>prima facie</u> case turns on whether he can establish a causal connection between the two.[2]  See Pl.'s Opp'n at 6.  As noted above, Duncan's primary

---

[2] In its March 2003 Opinion denying Defendant's Motion to Dismiss, the Court held that Plaintiff had "sufficiently alleged a causal connection between [his] protected activity and his April 2001 termination."  See <u>Duncan v. WMATA</u>, No. 01-2360, slip op. at 20-22 (D.D.C. Mar. 30, 2003).  Because the case is now before the

evidence of causation is the temporal proximity between the resolution of WMATA's appeal and his termination. See Pl.'s Opp'n at 5. This is not enough.

An adverse employment action that follows fast on the heels of an employee's protected activity may unquestionably establish causation in certain circumstances. See Gleklen v. Democratic Congressional Campaign Comm. Inc., 199 F.3d 1365, 1368 (D.C. Cir. 2000); see also Carter v. Greenspan, 304 F. Supp. 2d 13, 28 (D.D.C. 2004). The Supreme Court has ruled that this is not the case, however, where an employer had contemplated taking the adverse action before the employee initiated the protected activity. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001).

In Breeden, a school district employee argued that she had been demoted in retaliation for filing a lawsuit alleging sexual

---

Court in a very different procedural posture, however, that finding is not binding.

To survive a motion to dismiss, all factual allegations in the complaint must be liberally construed in the plaintiff's favor and he must simply establish that he is "entitled to offer evidence in support of [those] claims." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 625 (D.C. Cir. 1997). At the summary judgment stage, by contrast, a plaintiff may no longer "rest on the pleadings" but must adduce enough evidence to convince the court that a reasonable jury could find in his favor. See Behrens v. Pelletier, 516 U.S. 299 (1996); see also Laningham, 813 F.2d at 1242.

In the current posture, then, Duncan's burden is much higher than it was when the Court last addressed this issue. While the Court still must view all evidence in the light most favorable to him, Duncan must now show that there is a genuine issue of material fact regarding the alleged causal connection between his protected activity and his 2001 termination.

harassment.  Id.  Her sole evidence of causation was temporal
proximity: she filed her suit on April 1, 1997 and, on April 10,
1997, her supervisor notified the union representative that he
intended to demote her, an action that was not formalized until
some time later.  Id.  While the Ninth Circuit found causation in
this sequence of events, the Supreme Court reversed, noting that
even though the case was filed on April 1, 1997, the supervisor did
not learn of the suit until April 11, 1997, one day after
announcing the demotion.  Id.

Because Breeden's supervisor could not have known about the
protected activity at the time she initiated the adverse employment
action, the Supreme Court found that there could be no causation
even though the demotion did not take effect until after Breeden
filed suit.  "[E]mployers need not suspend previously planned
[employment actions] upon learning that a . . . suit has been
filed," the Court explained, "and their proceeding along lines
previously contemplated, though not yet definitively determined, is
no evidence of causation."  Id.; see also Carter, 304 F. Supp. 2d
at 30 ("Because his supervisors' . . . intention to dismiss him
predated his protected activity, his retaliatory discharge claim is
illogical and must be dismissed."); and Trawick v. Hartman, 151 F.
Supp. 2d 54, 63 (D.D.C. 2001) (noting that plaintiff could not
establish causation where "the termination process had already been
initiated" before his protected activities began"); Spadola v. New

York City Transit Authority, 242 F. Supp. 2d 284, 294-95 (S.D.N.Y.)(2003) (same); Holmes v. The Long Island R.R., 2001 U.S. Dist. LEXIS 10431 (E.D.N.Y.) (same).

Applying these principles to the facts of this case, the Court must conclude that Duncan cannot establish causation.  WMATA decided to terminate Duncan in 1993, prior to the filing of his EEOC complaint and nearly two years before he brought suit in this Court.  It is simply of no legal consequence, under the facts of this case, that nearly nine years passed before WMATA took its ultimate action against Duncan, terminating him in 2001.  Under the Supreme Court's reasoning in Breeden, so long as WMATA took steps to fire Duncan before he engaged in protected activities, which it clearly did, Duncan cannot establish retaliation, even though his termination became final well after those activities began and notwithstanding the reinstatement he obtained only because of this Court's Order.[3]  Here, as in Breeden, the employer decided on a course of action before it could possibly have known about the

---

[3]  The Court notes that on the specific facts of this case, to find retaliation in WMATA's actions would be contrary to the spirit of federal anti-discrimination laws.  A central purpose of those laws is "to put a plaintiff in the same position he/she would have been in had the discrimination not occurred, not in a better position."  Harper v. Godfrey Co., 45 F.3d 143, 149 (7th Cir. 1995).  Because the Court of Appeals found that WMATA had terminated Duncan lawfully in 1993, to require the Authority to maintain him in its employ now, simply because he brought suit in the interim, would undoubtedly place Duncan in a better position than he had been in prior to his protected activities – to the detriment of some other employee who should have had the position.

employee's protected activities.   Consequently, here, as in
Breeden, the employee cannot establish a causal link between the
end result of that decision and the protected activities in which
he engaged in the interim.[4]

Because Plaintiff has not established a prima facie case of
retaliation, the burden-shifting framework set forth in McDonnell
Douglas is not triggered.   Even assuming Plaintiff presented a
prima facie case, however, summary judgment in Defendant's favor is
still appropriate on the wrongful termination claim.   WMATA has
offered a legitimate non-discriminatory justification for its
action: that the "legal impediment to terminating him" in the first
instance, the Court's 1998 Order, "had been dissolved."   Def.'s
Mot. for Summ. J. at 17.   Duncan, however, has not presented
evidence sufficient to establish that WMATA's explanation is
pretextual.

In the burden-shifting context, "pretext is shown not through
evidence that an employer's proffered reasons are inaccurate or
incorrect, but through evidence that [they] are false or a lie."
Hanna v. Herman, 121 F. Supp. 2d 113, 118 (D.D.C. 2000) (citing
Aka, 156 F.3d at 1289 n.3).   Because "mere speculations are
insufficient to create a genuine issue of fact regarding [an

---

[4] Notwithstanding WMATA's reliance on Breeden in its opening
brief, and the clear factual similarities between that case and
this one, Duncan makes almost no attempt to distinguish Breeden
beyond arguing that WMATA "mischaracterizes and oversimplifies the
prevalent issues in this matter."   Pl.'s Opp'n at 7.

employer's] articulated reasons for [its decisions] and avoid summary judgment," the plaintiff must produce some objective evidence calling the truthfulness of the employer's rationale into question. <u>Brown</u>, 199 F.3d at 459 (internal quotation omitted); <u>see also</u> <u>Freedman v. MCI Telecomms. Corp.</u>, 255 F.3d 840, 844-45 (D.C. Cir. 2001).

Beyond renewing his arguments about temporal proximity and speculating that WMATA did not truly believe that his reinstatement was conditional, Duncan offers no independent evidence suggesting that its explanation is false. <u>See</u> Pl.'s Opp'n at 14-15. Instead, Plaintiff argues that because he performed his job satisfactorily throughout the period of his reinstatement, and "suffered numerous instances of hostility" perpetrated by his colleagues, "there is ample evidence from which a reasonable jury could infer pretext." <u>Id.</u> at 15. Neither his performance on the job nor the alleged acts of workplace hostility, unfortunate though those acts are, suggest that WMATA's proffered rationale is false. Accordingly, even if Plaintiff could make out a <u>prima</u> <u>facie</u> case of retaliation, there is nothing in the record to indicate that he could bear his burden at the pretext stage of the litigation.

For the foregoing reasons, summary judgment must be entered in Defendant's favor on the wrongful termination claim.

**B.   Defendant Is Entitled to Summary Judgment on the Failure to Rehire Claim Because Plaintiff Was Not Qualified For the AFC Parts Runner Vacancy in 2002**

Arguing that Duncan "cannot establish the first element of a prima facie case, that he was qualified for the [2002 parts runner vacancy]," WMATA also moves for summary judgment on his failure to rehire claim.  Def.'s Mot. for Summ. J. at 13.  Duncan counters that "whether he was qualified for the parts runner position is not as clear cut as Defendant claims" and that the only possible reason WMATA did not select him was "discrimination or retaliation." Pl.'s Opp'n at 16-17.  At a minimum, he contends, there is a genuine issue of material fact regarding his qualifications for the 2002 vacancy, thus precluding summary judgment for Defendant.  See id. at 17.

The Rehabilitation Act proscribes discriminatory or retaliatory refusal to hire and, as with other such claims, the McDonnell Douglas framework governs the Court's analysis.  See 42 U.S.C. § 12203.  On a retaliatory failure to hire claim, the plaintiff's prima facie case encompasses the three elements of an ordinary retaliation claim, that (1) he engaged in a statutorily protected activity, (2) suffered an adverse employment action, and (3) that a causal connection exists between the protected activity and the employment action.  The plaintiff must also establish two additional elements: (4) that he applied for the available job, and (5) that he was qualified for the position.  See Carter v. George

-15-

<u>Washington University</u>, 387 F.3d 872, 878 (D.C. Cir. 2004).  At the very least, the plaintiff must show "that his rejection was not based on 'the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.'"  <u>Stewart v. Ashcroft</u>, 352 F.3d 422, 429 (D.C. Cir. 2003) (quoting <u>Morgan v. Federal Home Loan Mortgage Corp.</u>, 328 F.3d 647, 651 (D.C. Cir. 2003).  If the plaintiff carries his initial burden, the remaining stages of the case proceed according to the burden-shifting framework described above.

On these facts, Duncan's <u>prima</u> <u>facie</u> case fails in at least two respects.  First, Duncan cannot demonstrate that he was qualified for the AFC parts runner vacancy in 2002.  Pursuant to the collective bargaining agreement, the vacancy announcement issued by WMATA in January 2002 stated that hiring preference would be given, first, to candidates from within the "Maintenance and Construction seniority district, System-Wide (L689)," second, to other WMATA employees, and, third, to external candidates.  <u>See</u> <u>id.</u>, Ex. 5 at 2.  On its face, therefore, the announcement makes clear that external candidates like Duncan would be considered for the vacancy only if no qualified WMATA employees came forward. <u>See</u> <u>id.</u>, Ex. 1, Buettner Dep. at 8.

It is undisputed that fifty-three internal candidates applied for the vacant parts runner job, that WMATA's personnel office

forwarded only those names to Buettner, and that an internal candidate was ultimately selected for the job.  See id., Ex. 8; Def.'s Reply at 12.  Because there was a sufficient number of internal candidates from which to make the selection, no external candidates were even considered.  See Def.'s Mot. for Summ. J., Ex. 1, Buettner Dep. at 8.  Accordingly, Duncan cannot meet his threshold burden of establishing that he was either absolutely or relatively qualified for the job.  See Stewart, 352 F.3d at 429.[5]

Second, while there is no question that he engaged in a protected activity, the EEOC claim and resulting lawsuit, and suffered an adverse employment action, the 2002 rejection, Duncan cannot establish a causal connection between the two.  To do so, he must proffer some evidence suggesting that the official who made the decision not to hire him knew of his protected activity.  See Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985) ("The causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity.").

---

[5]  That there was some remote chance that he would have been considered, had all fifty three internal candidates been rejected, does not, as Duncan suggests, present a genuine issue of material fact regarding his qualifications.  See Pl.'s Opp'n at 18.  Given the desirability of the AFC parts runner job, and the dozens of qualified internal candidates who applied for it, the possibility that WMATA would have looked to outside candidates like Duncan is simply too attenuated.  The Court cannot accept that a reasonable jury could find in Duncan's favor on this point.

Here, however, Duncan cannot establish the predicate fact that the selecting official even knew he was a candidate for the open position.   Charles Buettner, the WMATA official charged with filling the AFC parts runner vacancy in 2002, gave deposition testimony that at the time he made the selection, he was not aware that Duncan had applied for the job, even though he did know that Duncan had sued the Authority.[6]  See Def.'s Mot. for Summ. J., Ex. 1, Buettner Dep. at 5-7.  If Buettner did not know that Duncan had applied for the job, it follows as a matter of simple logic that Duncan's protected activity could not have factored into the decision to hire someone else.

Duncan has not made out a prima facie case on his failure to rehire claim, and thus, as was the case on his wrongful termination claim, McDonnell Douglas burden-shifting need not proceed. Nevertheless, here too, even if the Court were to assume the existence of a prima facie case, Defendant is still entitled to summary judgment.  WMATA's rationale for rejecting his application— that because he was an external candidate and fifty-three internal candidates applied, he was not even considered for the opening—is legitimate and non-discriminatory.   The collective bargaining agreement compelled this selection process, and there is no evidence suggesting that there was anything untoward about it.

---

[6]   Indeed, Duncan was not even on the list of eligible candidates given to Buettner by WMATA's personnel office.

<u>See</u> Def.'s Mot. for Summ. J. at 22.   As evidence of pretext, furthermore, Duncan only renews the speculation he advanced on his wrongful termination claim and adds the rhetorical question: "What possible reason, other than discrimination or retaliation, could Defendant have for not hiring someone who had already successfully performed in the position over a period of several years?"  Pl.'s Opp'n at 17.  For the reasons outlined above, Duncan's conclusory allegations are not sufficient evidence of pretext, and thus there is no question that summary judgment should be entered in WMATA's favor.  <u>Brown</u>, 199 F.3d at 459.

**IV.   CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment [Dkt. No. 37] is **granted**.

An Order will issue with this Memorandum Opinion.


                                        /s/
April 4, 2006                           Gladys Kessler
                                        U.S. District Judge


<u>Copies to</u>: **Attorneys of record via ECF**